**IT IS ORDERED as set forth below:**



**Date:  August 15, 2018**

_____

**W. Homer Drake
U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION**

| | | |
|---|---|---|
| **IN THE MATTER OF**: | : | **CASE NUMBERS** |
| | : | |
| JAMES ANDREW STACKS | : | BANKRUPTCY CASE |
| | : | 18-10001-WHD |
| Debtor. | : | |
| _____ | : | |
| JAMES ANDREW STACKS | : | |
| Movant, | : | Contested Matter |
| v. | : | |
| MELISSA J. DAVEY, | : | IN PROCEEDINGS UNDER, |
| Standing Chapter 13 Trustee | : | CHAPTER 13 OF THE |
| | : | BANKRUPTCY CODE |
| Respondent. | : | |

**ORDER**

The above-styled case came before the Court for a hearing on confirmation of the Debtor's Amended Plan on April 26, 2018. At the hearing, the Chapter 13 Trustee ("Trustee") raised objections to confirmation of the Debtor's amended plan.

After hearing argument from counsel at the hearing, the Court requested briefs from both parties. Having considered the record in this case, the arguments of counsel, and the briefs filed with the Court, the Court concludes as set forth below.

## Background

The instant case was filed on January 1, 2018. The Debtor is a below-median income debtor. The Debtor's Chapter 13 plan, as proposed, calls for payments of $350 per month for thirty-six (36) months. Among other terms, the plan proposes that the Debtor will retain all income tax refunds received during the life of the plan. For unsecured creditors, the Debtor proposes a pro rata share of $500, which is a 4.4% dividend.

The Trustee objects to confirmation on the grounds that the Debtor (1) does not contribute all of his disposable income to funding the plan as required by § 1325(b), and (2) has failed to propose his plan in good faith as required by § 1325(a)(3). The Debtor's proposed retention of all federal tax returns is the crux of the Trustee's objections.

## Discussion

This matter is a core proceeding pursuant to 28 U.S.C § 157(b)(2)(L). The Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334.

A. Projected Disposable Income and § 1325(b)

Section 1325(b) provides that if a trustee or unsecured creditor objects to a Chapter 13 debtor's plan, a bankruptcy court may not approve the plan unless it provides for the full repayment of unsecured claims or provides that all of the debtor's projected disposable income to be received over the duration of the plan will be applied to make payments to unsecured creditors under the plan. *Hamilton v. Lanning,* 560 U.S. 505, 130 S.Ct. 2464, 177 L.Ed.2d 23 (2010). Thus, § 1325(b)(1)(B) requires that the Debtor use all of his projected disposable income to be received during the life of the plan to pay his unsecured creditors. *In re LaPlana*, 363 B.R. 259, 264 (Bankr. M.D. Fla. 2007).

Disposable income is defined as current monthly income received by the debtor less amounts reasonably necessary for the maintenance or support of a debtor or a dependent of the debtor. 11 U.S.C. § 1325(b)(2). The Court, when determining "projected disposable income" under § 1325(b)(2), "may account for changes in the [D]ebtor's income or expenses that are known or virtually certain at the time of confirmation." (emphasis added) *Hamilton*, 560 U.S. at 523.

The Debtor bears the burden of proving that an expense is reasonably necessary. *Watson v. Boyajian (In re Watson)*, 403 F.3d 1, 8 (1st. Cir. 2005). In

3

determining reasonably necessary expenses for a below-median income debtor, the Court reviews the Debtor's budget found on Schedules I and J and the minimum level of expense necessary for housing, food, and clothing. *In re Myles,* 2006 Bankr. LEXIS 863, 2006 WL 6591834, *4; *In re Wensel,* 2013 Bankr. LEXIS 1408, 2013 WL 1397452 (S.D. Utah 2013). A court must balance creditors' rights against the appropriate basic needs of the Debtor and his dependents. *Watson*, 403 F.3d at 8.

Tax refunds are considered a part of projected disposable income.[1] *See In re Myles,* 2006 B.R. LEXIS 863, 2006 WL 6591834 (Bankr. N.D. Ga. 2005)(Murphy, J.) (stating projected disposable income is calculated by including the projected tax refunds the debtor will receive during the life of the case); *see In re Grady,* 343 B.R. 747 (Bankr. N.D. Ga. 2006)(Mullins, J.); *In re Ramos,* 494 B.R. 181, 186 (Bankr. D. Puerto Rico 2013) (stating that projected tax refunds have been held in many circuits to fall within the disposable income category). More importantly, it is the practice of this Court, along with many others, to require the turnover of tax

---

[1] *See In re Midkiff,* 342 F.3d 1194 (10th Cir. 2003); *In re LaPlana*, 363 B.R. 259 (Bankr. M.D. Fla. 2007) (projected disposable income includes future tax refunds to be received by a debtor during the life of the case); *In re Wensel,* 2013 Bankr. LEXIS 1408, 2013 WL 1397452 (S.D. Utah 2013).

4

refunds for payment into a Chapter 13 plan.   *See In re Myles,* 2006 Bankr. LEXIS 863, 2006 WL 6591834 (Bankr. N.D. Ga. 2005); *In re Wensel*, 2013 Bankr. LEXIS 1408, 2013 WL 1397452 (S.D. Utah 2013); *In re Midkiff*, 342 F.3d 1194 (10th Cir. 2003); *In re Jones,* 301 B.R. 840 (Bankr. E.D. Mich. 2003); *In re Ramos,* 494 B.R. 181 (Bankr. D. Puerto Rico 2013).

Nevertheless, the Debtor asserts that he should not have to turn the refunds over for payment into the plan.   Instead, the Debtor believes that he may prorate these refunds into his Schedule I disposable income calculation, and as a result of his Schedule J expenses, keep the tax refunds.   Further, the Debtor asserts that he does not have to show an actual expense that requires the retention and use of the refund, but that he must only show that a reasonable need exists. In support of this, the Debtor relies on *Marshall v. Blake,* 885 F.3d 1065 (7th Cir. 2018), a case in which the Seventh Circuit addressed a similar factual situation.   In *Marshall*, Ms. Blake was a below-median income debtor whose proposed plan did not provide for the turnover of post-petition tax refunds to the trustee.   Instead, Ms. Blake prorated her anticipated refunds and included this amount into her calculation of monthly income.   She also prorated certain reasonably expected expenditures and included this amount into her calculation of monthly expenses.   The trustee objected on the

5

grounds that Ms. Blake should be required to turnover her post-petition refunds. The Seventh Circuit, affirming the bankruptcy court, overruled the trustee's objections and held that Ms. Blake did not have to turn over the refunds to the trustee, but could instead prorate the anticipated refunds, as well as the expenditures that she reasonably anticipated making with the refunds.

Here, the Debtor attempts to take the same action as the debtor in *Marshall*. The Debtor, instead of turning over all refunds to the Trustee, amended his Schedule I to include prorated refunds. The Debtor also increased certain expenses on his amended Schedule J. The effect of the increase in Schedule J expenses is to allow the Debtor to retain the refunds.

The Court does not agree with this approach for two reasons. First, this contradicts the regular practice of the Court, which requires the turnover of refunds absent a showing by a debtor of a specific, actual need for a refund. The Debtor does not provide, nor is the Court aware, of any binding precedent in the Eleventh Circuit that supports the Debtor's actions. Second, even if the Court were to allow the Debtor to prorate the refunds, the refunds must still be paid into the plan because they constitute disposable income. The Debtor has not shown a specific need or expense, but merely suggests the funds are needed for expenses that might

6

arise in the future. Further, although *Marshall* is similar to the instant case, a significant factual distinction exists.

In *Marshall*, the Seventh Circuit recognized that the bankruptcy court allowed Ms. Blake to retain the refunds to pay for <u>known</u> or <u>virtually certain</u> future expenses. (emphasis added) *Marshall,* 885 F.3d 1065. Specifically, Ms. Blake stated she needed the refunds for expenditures involving her son's high school graduation, as well as bedroom furniture for her children. These expenses were reasonably necessary and, more importantly, were known and disclosed to the bankruptcy court. In the instant case, the Debtor, unlike *Marshall*, has not shown the Court that the refunds are needed for any specific, actual expense.

The Debtor also asserts that the refunds are needed for reasonable and necessary expenses that may arise in the future. At first glance, based on the Debtor's amended Schedule J – the Debtor's assertion appears to bear some weight. However, upon comparing the amended Schedules I and J with the original Schedule I and J – the Court is not convinced. The Debtor's original Schedule I indicates a monthly take-home income of $2,400. The Debtor's original Schedule J lists expenses for, among others, "utilities" (line 6) in the amount of $195 per month, "food and housekeeping supplies" (line 7) in the amount of $567 per

7

month, and "medical and dental" (line 11) in the amount of $85 per month. This results in total monthly expenses in the amount of $2,120, leaving the Debtor with a monthly net income of $280. On the amended Schedule I, the Debtor prorated his 2017 refund and included that value into the income calculation, resulting in a $448 increase in the Debtor's income. On the amended Schedule J, the Debtor increased the expenses for "utilities" from $195.00 to $235.00, "food and housekeeping supplies" from $567.00 to $875.00, and "medical and dental" from $85.00 to $115.00. This results in a $348.00 increase in expenses compared to the expenses asserted in the original Schedule J. The Debtor provides no explanation for this increase. The timing of the amended expenses in relation to the inclusion of the tax return, the inability to explain the increased expenses, and the Debtor's stated intent to create an emergency fund leads the Court to infer that the purpose of increasing these expenses is to simply allow the Debtor to retain his tax refunds for no specific purpose other than "in case of an emergency." As a result, the Debtor's actions do not fall within the factual purview of the Seventh Circuit's decision in *Marshall.* Therefore, the Debtor's reliance on Marshall is unavailing. The Court will not condone the practice of retaining tax refunds simply for the purpose of having a "rainy day" or "comfort" fund.

8

The Debtor submits, as a matter of public policy, that he should be allowed to retain the refunds because he receives an Earned Income Tax Credit ("EITC"). Since the purpose of the EITC is to support low-income families and help such people meet the basic costs of life, the Debtor believes he should be able to keep these funds in case of an emergency that may arise during the case.   The Debtor also maintains that this will enable him to have immediate access to these funds and avoid the delay and cost of filing motions.   The Court does not agree.

The Debtor's concerns regarding unexpected future expenses and the need for an emergency fund are not enough to warrant the Debtor's retaining the entire refund amount.   There are several procedural avenues available through which the Debtor can alleviate his concerns.   The Debtor may file a Motion to Retain Tax Refunds and may do so upon a showing that such funds are reasonably necessary for the support of the Debtor's household.   The Debtor may also file a Motion to Suspend Plan Payments, if circumstances arise which necessitate such action. Further, addressing the need for an "emergency fund", § 2.3 of this District's local form plan allows the Debtor to retain up to $2,000 of any income tax refund

without having to file any request or motion.[2]

Addressing the EITC concerns, the Court notes that a breakdown of the Debtor's 2017 refund reveals that the EITC component only amounts to less than half of the Debtor's total federal refund. In 2017, the Debtor received a federal income tax refund of $5,247.00. Of that total, only $2,471.00 is derived from the EITC. As noted above, the form plan allows, and the Trustee has acquiesced, to the Debtor's retention of up to $2,000 of his tax refund in a year, no questions asked. This amounts to the majority of Debtor's EITC refund.

B. Good Faith Requirement

"The principal purpose of the Bankruptcy Code is to grant a 'fresh start' to the 'honest but unfortunate debtor.'" *Marrama v. Citizens Bank of Mass.*, 549 U.S. 365, 367, 127 S. Ct. 1105, 166 L. Ed. 2d 956 (2007) (quoting *Grogan v. Garner*, 498 U.S. 279, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991)). A plan that is not proposed in good faith does not meet the essential requirement for confirmation under § 1325(a). *See* 11 U.S.C. § 1325(a)(3). The Debtor bears this burden of proof at confirmation. *In re Jacobs*, 2005 Bankr. LEXIS 3495, 2005 WL

---

[2] The Debtor may also retain state tax refunds.

10

6742490, at *2 (Bankr. S.D. Ga. 2005).

Since the Code does not define "good faith", the Court relies on the non-exhaustive list of factors set forth in *In re Kitchens*. *See In re Brown*, 742 F.3d 1309, 1316 (11th Cir. 2014)(citing *In re Kitchens*, 702 F.2d 885, 888-89 (11th Cir. 1983)). These factors are:

(1) the amount of the debtor's income from all sources;
(2) the living expenses of the debtor and his dependents;
(3) the amount of attorneys fees;
(4) the probable or expected duration of the debtor's chapter 13 plan;
(5) the motivations of the debtor and his sincerity in seeking relief under the provisions of chapter 13;
(6) the debtor's degree of effort;
(7) the debtor's ability to earn and the likelihood of fluctuation in his earnings;
(8) special circumstances such as inordinate medical expenses;
(9) the frequency with which the debtor has sought relief under the bankruptcy reform and its predecessors;
(10) the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealings with his creditors;
(11) the burden which the plan's administration would place on the trustee;
(12) the extent to which claims are modified and the extent of preferential treatment among classes of creditors;
(13) substantiality of the repayment to the unsecured creditors; and
(14) other factors or exceptional circumstances.

*In re Kitchens*, 702 F.2d at 888-89. Essentially, the *Kitchens* test is a "totality of

the circumstances" test, and the Court must examine the facts of the instant case in light of the *Kitchens* criteria to determine whether the plan is proposed in good faith.  *In re Brown,* 742 F.3d at 1317.

In the instant case, the Trustee asserts that the Debtor's proposed retention of the tax refunds and the treatment of unsecured creditors is indicative of a lack of good faith.  In evaluating this objection, the Court analyzes the Debtor's income, claimed expenses, and the treatment of unsecured creditors – the first, second, and thirteenth Kitchens' factors.  The "good faith" standard of §1325(a)(3) does not set any minimum amount or percentage of payments that must be made to unsecured creditors.  Colliers on Bankruptcy, ¶ 1325.11 (16th Ed.). However, the Court has the power to deny confirmation of a plan under this section if it finds that the proposed payment is unreasonable.  *See Neidich v. Lorenzo (In re Lorenzo),* 2014 Dist. LEXIS 64321, *11 (S.D. Fl. May 8, 2014); *Matter of Hutcherson,* 186 B.R. 546, 551 (Bankr. N.D. Ga. 1995)(Drake, J.) (citing *In re Curry,* 77 B.R. 969, 969-70 (Bankr. S.D. Fla. 1987)) (this Court found a debtor who did not fully commit his disposable income cannot be said to have proposed the plan in good faith).

As discussed in the preceding section, it is the practice of this Court, along with many others, to require tax refunds be paid into the plan unless the Debtor can

prove an actual need exists that requires retention of the refunds. Further, the Debtor offers no explanation, other than "in case of an emergency," for the increase of expenses on amended Schedule J. As a result, and in accordance with the preceding section, the Court finds that the tax refunds are not necessary for the reasonable and necessary expenses of the Debtor.

The Court cannot overlook the treatment of unsecured creditors in the instant case and finds that allowing the Debtor to retain the tax refunds creates a preposterous result. The Debtor purposes to retain tax refunds for the years 2017 through 2019. The Debtor's 2017 federal income tax refund was $5,247.00, which is more than two months of the Debtor's net income and more than the Debtor proposes to pay into the plan for an entire year. As there is nothing to suggest, and no assertions to the contrary, that these refunds will not remain approximately the same value going forward,[3] the Debtor will retain approximately $15,741.00 during the life of case. By contrast, the Debtor proposes only a $500.00 pool to be paid pro rata to unsecured creditors, which amounts to a 4.4% dividend.

The Trustee submits, and the Court agrees, that the Debtor can provide a

---

[3] The Debtor received refunds in the amount of $5,440.00 in 2016 and $5,247.00 in 2017. The Debtor anticipates no change in employment, income, or other factor that may affect tax refunds for the years 2018 and 2019.

13

substantially larger return for unsecured creditors and still retain a portion of the tax refunds. For example, the Debtor could retain $2,000 of his tax refund each year while paying any amount over $2,000 into the plan. Given the anticipated value of the refunds, this would increase the dividend to unsecured creditors from 4.4% to approximately 74%.

The Court acknowledges that exceptional circumstances could exist that support a finding of good faith, even though the Debtor proposes only a nominal repayment to unsecured creditors. *In re Kitchens*, 702 F.2d 885, 889 (11th Cir. 1983)(citing *Matter of Bellgraph,* 4 B.R. 421 (Bankr. W.D.N.Y. 1980)). However, the Debtor has made no attempt to show exceptional circumstances that justify the disparity between the unsecured creditors' treatment and the amount of money retained by the Debtor. The Court will not confirm a plan that provides so little to unsecured creditors and allows the Debtor to retain such a large sum. Given the circumstances of the case, the proposed plan does not comply with the requirements of § 1325(a)(3).

## Conclusion

Therefore, in accordance with the foregoing, it is hereby **ORDERED** that the objections to confirmation are sustained**.** The Debtor is granted leave to file

modifications of his Chapter 13 plan consistent with the conclusions of law *supra*.

The Clerk is **DIRECTED** to serve this Order on the Debtor, Debtor's Counsel, the Chapter 13 Trustee and the United States Trustee.

**END OF DOCUMENT**